THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR361 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ANDRE BADLEY, | ) | |
| | ) | (Resolves Doc. 19) |
| Defendant. | ) | |

This matter comes before the Court on Defendant Andre Badley's motion to suppress the evidence gathered against him.  Doc. 19. The motion is DENIED.

1. *False Information*

Initially, Badley appears to contend that his search warrant was tainted by the inclusion of materially false information.  Specifically, Badley takes issue with the statement "This vehicle was monitored by members of your Affiant's squad until the time it arrived and meets with the CI."  Doc. 25-1 at 6.  The preceding quote references Badley's vehicle after it departed 646 Turney Road and travelled to meet the CI for a controlled buy.  Badley contends that the contends of a supplemental report make it clear that this is a false statement.  The supplemental report reads:

> I WAS ABLE TO PERFORM A LOOSE TAIL ON THE TARGET.  DURING OUR TRAVELS I LOSS SIGHT OF THE TARGET BUT CONTINUED TO

> TRAVEL THE MOST DIRECT ROUTE TO THE LOCATION OF THE BUY WHICH I ESTIMATE TO BE APPROXIMATELY 20 MINUTES UNDER NORMAL DRIVING CONDITIONS.
>
> WITHIN A MINUTE OR SO OF MY ARRIVAL IN THE AREA, I SAW THE TARGET VEHICLE UNDER THE OPERATION OF THE TARGET, ARRIVE ON LOCATION. ALTHOUGH I LOSS [sic] CONTINOUS SIGHT OF THE TARGET WHILE EN ROUTE TO THE LOCATION OF THE BUY, BASED ON OUR ARRIVAL TIMES IT IS MY BELIEF THAT IT IS IMPROBABLE THE TARGET HAD TIME TO STOP DURING HIS TRAVELS. UPON THE TARGET'S ARRIVAL, I ABORTED MY DUTIES AS THE PRIMARY OBSERVER.

Doc. 21-3 at 1 (formatting sic).  In conclusion, Badley contends that because officers lost sight of the vehicle at one point that the statement that the vehicle was monitored is false.

The *Franks* Court set out the standard a defendant must satisfy to warrant a hearing as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978).  This high initial burden is designed to prevent defendants from abusing the process and to ensure that frivolous claims do not result in mini-trials.  *Id*. at 170.

Badley's argument falls short for several reasons.  First, the initial sentence of the same paragraph of the affidavit reads:  "Affiants avers that the CI travelled to the area in the City of Cleveland while under *constant surveillance* by members of your affiant's squad." Doc. 25-1 at 5 (emphasis added).   As that language makes clear, when the affiant wanted to convey a view

2

that surveillance had been conducted without interruption, careful language was chosen to establish that fact.  The use of the term "monitored," contrary to Badley's contention, does not indicate "constant surveillance."  In fact, it would defy logic for the affiant to use distinct terms in the *same* paragraph if they were intended to convey the same information.

Second, Badley wholly discounts the explanation given in the supplemental report without any factual basis.  Badley effectively contends that losing sight of the vehicle negated the *entirety* of the surveillance.  In so doing, he ignores that Badley arrived at the scene of the controlled buy within one minute of the officer, and the officer took the most direct route.  While Badley asks this Court to find the officer's conclusion is "absurd."  Doc. 19 at 6. However, his own factual arguments wholly support the officer's conclusion.  After losing sight of Badley, the officer took the most direct route to the location of the controlled buy.  In so doing, he arrived roughly one minute before Badley.  The officer also gave no indication that he passed or regained sight of Badley.  As such, the  undeniably factual conclusion that flows from this is that Badley took a less-than-direct route to the scene of the controlled buy.   While Badley contends that this creates a probability that Badley stopped somewhere else to retrieve the drugs, he ignores the officer's timeline that Badley arrived within a minute of him.  If Badley took a more time-consuming route to the location and arrived within one minute of the officer taking a direct route, it strains logic that Badley was able to detour to a stash house, retrieve the proper quantity of drugs requested by the CI, return to his vehicle, and still travel to the buy location and arrive so close in time to the officer.  Accordingly, there is no support for Badley's argument that omitted that the officer lost sight of Badley from the affidavit warrants a *Franks* hearing.

2. *Reliability of the informant*

"A warrant will be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007)(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)(quoting *Gates*, 462 U.S. at 231). In turn, when a warrant is supported by an affidavit, "[c]ourts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). Therefore, "review of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Id*. Thus, "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

The Sixth Circuit has previously explained that "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532. "[T]his independent police corroboration may be established by a police-monitored controlled buy[.]" *United States v. Hawkins*, 278 Fed.Appx. 629, 635 (6th Cir. 2008). Indeed, law enforcement officers frequently employ controlled purchases of illegal narcotics in order to establish probable cause in circumstances where they cannot personally vouch for the reliability and credibility of a particular confidential informant. *See, e.g., United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (concluding that

4

"corroboration of events that occurred during the controlled buy, as set forth in the affidavit, provide sufficient probable cause to sustain issuance of the search warrant"); *United States v. Coffee*, 434 F.3d 887, 894 (6th Cir. 2006) (affirming the district court's conclusion that even though there were no statements in the affidavit about the reliability of the CI, "[the officer's] statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant"); *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003) (noting that "the affidavit in th[e] case contained [the officer's] personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the confidential informant were later tested positive for cocaine base"). Moreover, in a case that included only a single controlled buy, the Sixth Circuit held:

> Admittedly, in the instant case, the affidavit only details one controlled purchase and fails to mention whether law enforcement officials monitored the purchase with a listening device. That notwithstanding, and in reliance on [prior precedent], under the totality of the circumstances in this case, the single controlled purchase was sufficient independent corroboration of the confidential informant. Thus, the warrant was supported by probable cause.

*United States v. Henry*, 299 Fed. Appx. 484, 487–88 (6th Cir. 2008)

In this case, officers used equipment to monitor the call the CI placed to Badley to arrange the controlled buy. Officers then witnesses Badley leave the 646 Turney Road and travel to the location of the controlled buy. Badley then appeared and completed the sale of drugs to the CI. Standing alone, this was sufficient to establish the reliability of the CI. However, the affidavit also makes clear that the CI was able to provide information that Badley was living in an apartment in the "Garfield Heights, Maple Heights, and Bedford area" and was living with a girl named Ash. The CI also indicated that Badley drove a black Chevy Trailblazer and a black BMW. The affidavit makes clear that police surveillance and investigation corroborated all of

this information. Accordingly, there is no basis upon which to call into question the reliability of the CI.

     3. *Nexus*

Next, Badley contends that the warrant failed to establish probable cause to search the 646 Turney Road address.[1] "To justify a search, an officer must demonstrate 'why evidence of illegal activity will be found in a particular place.' *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*). There must be a connection between the location of the search and the subject of the search." *United States v. Raglin*, 663 F. App'x 409, 411 (6th Cir. 2016). "[W]hether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985).

In this case, the CI engaged in a monitored call with Badley to arrange the controlled buy. "Shortly after the offer to sell was made," Badley emerged from the residence at 646 Turney Road. Doc. 25-1 at 5-6. As such, Badley engaged in drug trafficking while present at 646 Turney Road. As discussed above, Badley's contention that the nexus to 646 Turney was somehow destroyed when officers were unable to follow him for the entirety of his drive to the sight of the controlled buy is untenable. Even assuming the near impossible – that Badley was able to stop at a secondary location, retrieve the precise amount of crack cocaine agreed upon during the call with the CI, return to his vehicle, and still arrive at the buy location within one minute of the officer that had started off tailing him – it would not negate the fact that Badley

---

[1] Badley makes reference to the fact that this was not his legal residence but concedes that he was a frequent overnight guest at the address.

engaged in drug trafficking activities *while* present at 646 Turney Road. As a result, the affidavit established probable cause for the search of 646 Turney Road.

Based upon the above, Badley's motion to suppress is DENIED.

In closing, the Court notes that Badley's motion to suppress was resolved by the Court with diligence. However, the resulting opinion above was finalized only the day prior to Badley's scheduled trial date due to the press of business created by the pandemic and the District's general orders that limited trials for nearly 18 months. Accordingly, the Court must continue that trial date to allow counsel the opportunity to review this order and to give the parties and the Court ample opportunity to prepare for trial. The Court finds that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A).

IT IS SO ORDERED.


October 5, 2021	/s/ Judge John R. Adams
	JUDGE JOHN R. ADAMS
	UNITED STATES DISTRICT COURT